# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO. 3:09-CR-00145-R

UNITED STATES OF AMERICA                                                               PLAINTIFF

v.

MONTEZ DOMINIC ROBINSON                                        DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion to Suppress Physical and Testimonial Evidence Obtained as a Result of an Illegal Seizure and Warrantless Search (DN 40). A suppression hearing was held on January 19, 2010, in Louisville. Appearing for the United States was Mac Shannon, AUSA, and for the Defendant was Patrick J. Bouldin, Asst. Federal Public Defender. Terri Turner, official court reporter, recorded the proceedings. This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

On September 10, 2009, Defendant Montez Dominic Robinson was arrested and later indicted for knowingly and intentionally conspiring to possess with intent to distribute fifty grams or more of a mixture or substance containing cocaine base, commonly known as "crack" cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii). According to the testimony presented at the suppression hearing, the events leading to his arrest are as follows.

In August 2009, agents in the Drug Enforcement Administration ("DEA") were conducting an investigation with the assistance of a confidential informant ("CI"). The CI negotiated the purchase of crack cocaine on three separate occasions from Robinson's alleged co-conspirator, William David Glenn. On August 25, 2009, the CI met Glenn at the Bob Evans

Restaurant located on Dixie Highway in Louisville, Kentucky, and purchased approximately one ounce of crack cocaine from him. The deal occurred in the bathroom of the Bob Evans. There is no evidence that Robinson was present that day.

The second transaction took place on September 3, 2009. The CI arranged to purchase approximately two ounces of crack cocaine from Glenn, again at the Bob Evans on Dixie Highway. Glenn drove into the parking lot along with another car, a white Chevrolet Caprice with tinted windows. The two cars were parked close together. Glenn exited his vehicle, went inside the Bob Evans, sold the crack cocaine to the CI in the bathroom of the restaurant, and returned to the parking lot. He then briefly sat in the Caprice before returning to his car and exiting the parking lot.

The Caprice exited the parking lot at the same time, without the driver, later identified as Robinson, ever exiting the vehicle. Robinson drove a short distance across the highway to a nearby gas station, where he refueled his car. The agents observed Robinson at the gas station and obtained the license plate number of his car. Later, the agents ascertained that the Caprice was registered to Robinson, compared his driver's license photo to the gas station surveillance video, and discovered that he had previously been convicted of trafficking a controlled substance.

The final transaction took place on September 10, 2009. The CI arranged to buy four ounces of crack cocaine in the same manner he had the prior two occasions. Glenn, in a Dodge Neon, arrived in tandem with Robinson, again in his white Caprice. Once again, they parked close by, but not next to, each other in the parking lot. Glenn exited the Neon, but instead of going directly into the Bob Evans he visited Robinson in the Caprice for approximately one

minute. He then went inside the Bob Evans and sold the crack cocaine to the CI in the bathroom of the restaurant. Upon returning to the parking lot, he sat in the passenger seat of the Caprice for about two to three minutes. Glenn then got back into the Neon, and both vehicles exited the parking lot.

Agent Tom Perryman followed Robinson once he exited the parking lot. Because Robinson was driving very slowly, Perryman attempted to track him by driving in front of him, so as to not arouse Robinson's suspicions that he was being followed. By chance, Robinson did follow Perryman for a certain distance. Then, Robinson pulled into a residential driveway and turned around, changing direction on the road. At this point, Perryman signaled to the deputy sheriffs who were following Robinson and they stopped the Caprice. Robinson was arrested and searched. On him was a portion of the buy money the agents had provided to the CI to purchase the crack cocaine.

## DISCUSSION

The issue before the Court is whether the Government had sufficient probable cause to arrest Robinson on September 10, 2009. "Warrantless searches violate the Fourth Amendment's guarantee against unreasonable searches and seizures, with 'only a few specifically established and well-delineated exceptions.'" *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "A search 'incident to a lawful arrest' is among the exceptions." *Id.* (quoting *Chimel v. California*, 395 U.S. 752, 762-63 (1969)). Consequently, if the Government had probable cause to arrest Robinson, then the search incident to his arrest was lawful.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where

there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[T]here is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). "'Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.'" *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). Officers need not *know* that a crime has occurred prior to arrest, nor must they possess evidence sufficient to establish guilt beyond a reasonable doubt, but they are required to "show more than mere suspicion" and "be able to articulate concrete facts from which they infer a probability that illegality has occurred." *Strickland*, 144 F.3d at 415-16.

Robinson's actions prior to his arrest were no doubt suspicious. He arrived and left at the same time as Glenn, who the agents knew was selling crack cocaine in the bathroom of the Bob Evans. Robinson never left his car. Twice Glenn sat in Robinson's car immediately after the drug deal, prior to returning to his own vehicle. On the third occasion, Glenn also went to Robinson before entering the Bob Evans. Agents testified that these actions indicated Glenn was splitting or giving the drug money to the supplier of the drugs. Agents also testified that Robinson's driving behavior, both driving a short distance to the gas station after the second transaction and driving slowly after the final transaction, was consistent with someone attempting to ascertain whether he was being followed. Finally, the agents knew that Robinson

4

had a prior conviction for drug trafficking.

Robinson's counsel argued at the hearing that the evidence did not support the reasonable conclusion that Robinson was engaged in criminal activity. Robinson was not an original target of the investigation. The CI never had any contact with Robinson, nor could he identify him later. The agents never saw Robinson in possession of the drugs. The agents could not see what transpired between Robinson and Glenn due to the heavily tinted windows on the Caprice. The Caprice was registered to Robinson, and he drove it both times to the Bob Evans, which is atypical of drug dealers, who tend to use different cars registered to people other than themselves. Robinson was not present at the first transaction. There is no proof that money exchanged hands after the second transaction. Despite the fact that the agents knew who Robinson was, they did not get a warrant prior to the third transaction. Each transaction was a little different, so that there was not a pattern of drug trafficking. Many different types of driving could be characterized as suspicious. Driving slowly and turning around in a driveway is not proof of illegal activity.

While Robinson's arguments may support a juror's reasonable doubt, the Court finds that the agents have demonstrated that a prudent person would have concluded that there was a reasonable probability that Robinson was involved in illegal activity. Considering the totality of the facts and circumstances, the Court finds that the agents had probable cause to believe Robinson was involved in Glenn's selling of crack cocaine to the CI. On two occasions he arrived and left the Bob Evans with Glenn, had no other apparent purpose of being at the Bob Evans, interacted with Glenn after one transaction and before and after the other, exited the restaurant in what agents considered to be a suspicious manner, and had a history of drug

trafficking. Therefore, the subsequent search of Robinson was lawful and did not violate his Fourth Amendment rights.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress Physical and Testimonial Evidence Obtained as a Result of an Illegal Seizure and Warrantless Search (DN 40) is DENIED.

IT IS FURTHER ORDERED that a telephonic further proceeding for scheduling purposes be held on February 10, 2010, at 10:00a.m. Eastern Standard Time. The Court shall place the call.